**MANDATE**

24-cv-1872 (LJL)

25-995
*Puchtler v. Barclays PLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of December, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
>> *Chief Judge,*
>
> REENA RAGGI,
>
> MICHAEL H. PARK,
>> *Circuits Judges.*

---

MICHAEL PUCHTLER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

     *Plaintiff-Appellant,*

    v.    25-995

BARCLAYS PLC, BARCLAYS BANK PLC, JAMES E. STALEY, TUSHAR MORZARIA, C.S. VENKATAKRISHNAN,

     *Defendants-Appellees,*

---

For Plaintiff-Appellant:     TIMOTHY SPERLING, Bruce S. Sperling, Jerry Santangelo, Nathan A. Shev, Sperling Kenny Nachwalter, LLC, Chicago, IL.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jan 08, 2026

1

|   |   |   |
|---|---|---|
|   |   | Frederic S. Fox, Robert N. Kaplan, Donald R. Hall, Melinda Campbell, Kaplan Fox & Kilsheimer LLP, New York, NY. |
|   | For Defendants-Appellees: | JEFFREY T. SCOTT, Matthew J. Porpora, Julia A. Malkina, Jacob E. Cohen, Sullivan & Cromwell LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.[1]

Plaintiff-Appellant Michael Puchtler appeals a decision and order of the United States District Court for the Southern District of New York, entered on March 21, 2025, granting Defendants-Appellees Barclays PLC, Barclays Bank PLC, James E. Staley, Tushar Morzaria, and C.S. Venkatakrishnan's motion to dismiss for failure to state a claim and dismissing with prejudice his putative class action complaint alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The district court determined that many of the alleged misstatements in the complaint were immaterial, that Puchtler failed to plead scienter under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and that he failed to plead loss causation.

This putative securities class action concerns the over-issuance of Barclays' VXX ETN.[2] Following a 2017 settlement with the Securities and Exchange Commission ("SEC"), Barclays lost its status as a well-known seasoned issuer ("WKSI") under the securities laws. Consequently, Barclays had to comply with stricter securities registration requirements. With WKSI status,

---

[1] We grant Puchtler's June 13, 2025 motion to take judicial notice of four documents.
[2] The VXX ETN is a security issued by Barclays that aims to track the VIX, an index that measures the volatility of the S&P 500. Because the VIX is only a numerical calculation that itself cannot be traded, issuers like Barclays have created tradeable securities for investors who want to bet on market volatility.

Barclays could issue securities and pay the required SEC filing fees on a "pay-as-you-go" basis. Without it, Barclays needed to quantify in advance how many securities it planned to issue and pay its filing fees up front. But Barclays failed to develop the necessary internal controls to track how many securities it had issued, so as not to sell more than it had registered with the SEC. On March 14, 2022, Barclays alerted regulators that, due to the lack of such controls, it had issued more securities than it had registered. Barclays immediately suspended further sales and issuances of the VXX ETN. As a result, the price of VXX securities rose to more than 140% of their indicative value, causing large losses for short sellers of the VXX ETN.

Puchtler, a short seller, alleges that Staley, Morzaria, and Venkatakrishnan (the "Individual Defendants") knew about or recklessly disregarded Barclays' lack of internal controls to track securities issuances and that they made material misstatements concerning the same. On appeal, he argues that the putative class action complaint adequately pleads (1) that the Individual Defendants materially misrepresented the internal controls at Barclays, (2) that the Individual Defendants acted with scienter, and (3) loss causation. Concluding that the district court was correct in determining that Puchtler failed to allege with particularity facts giving rise to a strong inference of scienter, we affirm on this basis without reaching any of the other issues. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we set forth in this summary order only as necessary to explain our decision to **AFFIRM**.

\* \* \*

To successfully plead scienter under the PSLRA, a plaintiff must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A). A "strong inference" of scienter is an inference that is "more than merely

3

plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). In making this determination, "the court must take into account plausible opposing inferences." *Id.* at 323. Because "[t]he strength of an inference cannot be decided in a vacuum," "[t]he inquiry is inherently comparative." *Id.* Accordingly, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 324. And only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged" will the complaint survive. *Id.* In short, the court is to ask: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326.

"In addition to intent, recklessness is a sufficiently culpable mental state for securities fraud in this circuit." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). We define recklessness as "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (alteration in original) (quoting *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 47 (2d Cir. 1978)). "At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed

4

to check information they had a duty to monitor."[3] *ECA*, 553 F.3d at 199 (internal quotation marks omitted).

Puchtler does not adequately allege facts giving rise to a strong inference of scienter. The complaint is devoid of allegations suggesting that the Individual Defendants knew about the lack of controls at Barclays when the alleged misstatements were made. Instead, Puchtler alleges that the Individual Defendants knew about the consequences of Barclays losing its WKSI status. For example, Puchtler alleges that "Defendants were aware of the additional responsibilities that resulted from losing their WKSI status." Joint App'x at 34. Likewise, he alleges that "[f]ollowing the loss of WKSI status, certain personnel from [Barclays] understood the consequences of this status change." Joint App'x at 32. But the complaint does not allege that management regularly met with the working group that had been impaneled to address the loss of WKSI status, that the working group communicated to management the ongoing lack of controls, that any of the Individual Defendants gave a command not to develop controls, or that anyone with knowledge of the lack of controls provided that information to the named Individual Defendants.

The allegations that are in the complaint, moreover, fail to give rise to a strong inference that the Individual Defendants knew that Barclays lacked controls at the time of the alleged misstatements. Instead, a consistent non-culpable inference is that the Individual Defendants knew about the consequences of the loss of WKSI status and delegated the task of tracking securities issuances to the working group that they had impaneled. In hindsight, the working group did not track the securities issued by Barclays. But Puchtler does not make any allegations that the Individual Defendants were contemporaneously aware that the working group had not put in place

---

[3] "When the defendant is a corporate entity, . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter. *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

5

adequate controls to track securities issuances.

Without a link between the working group and the Individual Defendants, Puchtler's allegations do not raise a strong inference of scienter. Accordingly, the district court did not err in dismissing his complaint in full.

\*       \*       \*

We have considered Puchtler's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

6